

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LARRY BARTLETT; MICHAEL | : | |
| MADDOX; WILLIAM T. GLAZE; | : | |
| ANGELO DANIEL; GREGORY D. | : | |
| HARALSON; GARLAND WATKINS; | : | |
| PERRY JOINER, DEANN CASH; | : | CIVIL ACTION FILE |
| CHARLOTTE NELSON; and | : | NO._____ |
| BRIAN CRISP, | : | |
| | : | **1 06-CV-0211** |
| Plaintiffs, | : | |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| vs. | : | |
| | : | |
| CLAYTON COUNTY, GA., | : | |
| VICTOR HILL, Individually and in his | : | |
| Official Capacity as Sheriff of Clayton | : | |
| County, Ga.; and  the CLAYTON | : | |
| COUNTY SHERIFF'S OFFICE; | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

NOW COME the above-named Plaintiffs  and hereby submit their Complaint,

against the above-named Defendants on the following grounds.

## JURISDICTION AND VENUE

1.

This Court has jurisdiction over the matter pursuant to 28 U.S.C. §1331 and

1343.

-1-



2.

Venue in this district and division is proper under 28 U.S.C. §1391 as some or all of the Defendants are located in the Northern District of Georgia, Atlanta Division, and the unlawful conduct complained of herein occurred in this district and division.

## PARTIES

3.

Plaintiff Larry A. Bartlett is an employee within the Clayton County Sheriff's Office. Bartlett, who is a white male certified as a Peace Officer by the State of Georgia, holds the rank of Major with the Clayton County Sheriff's Office ("CCSO").

4.

Plaintiff Michael G. Maddox is an employee within the Clayton County Sheriff's Office. Maddox, who is a white male certified as a Peace Officer by the State of Georgia, holds the rank of Major within the CCSO.

5.

Plaintiff William T. Glaze is an employee within the Clayton County Sheriff's Office. Glaze, who is a white male certified as a Peace Officer by the State of Georgia, holds the rank of Captain within the CCSO.

6.

Plaintiff Angelo Daniel is an employee within the Clayton County Sheriff's Office. Daniel, who is a black male certified as a Peace Officer by the State of Georgia, holds the rank of Captain within the CCSO.

7.

Plaintiff Gregory D. Haralson is an employee within the Clayton County Sheriff's Office. Haralson, who is a white male certified as a Peace Officer by the State of Georgia, holds the rank of Captain within the CCSO.

8.

Plaintiff Garland Watkins is an employee within the Clayton County Sheriff's Office. Watkins, who is a black male certified as a Peace Officer by the State of Georgia, holds the rank of Lieutenant within the CCSO.

9.

Plaintiff Perry Joiner is an employee within the Clayton County Sheriff's Office. Joiner, who is a white male certified as a Peace Officer by the State of Georgia, holds the rank of Lieutenant within the CCSO.

10.

Plaintiff Deeann Cash is an employee within the Clayton County Sheriff's Office. Cash, who is a white female certified as a Peace Officer by the State of

Georgia, holds the rank of Lieutenant within the CCSO.

11.

Plaintiff Charlotte Nelson an employee within the Clayton County Sheriff's Office. Nelson, who is a black female, is certified as a Peace Officer by the State of Georgia, holds the rank of Lieutenant within the CCSO.

12.

Plaintiff Brian Crisp is an employee within the Clayton County Sheriff's Office. Crisp, who is a white male certified as a Peace Officer by the State of Georgia, holds the rank of Sergeant within the CCSO.

13.

The Defendant Victor Hill is an Officer of Clayton County , Georgia, occupying the elected position of Sheriff of Clayton County. Defendant Hill is a is sued in both his individual capacity, and his official capacity as Sheriff of Clayton County. Defendant Hill may be served with process at his business address of 9157 Tara Boulevard, Jonesboro, Ga. 30236.

14.

The Defendant Clayton County Sheriff's Office ("CCSO") is a public body or organization subject to an action within the meaning of O.C.G.A. §9-11-4, and is an "unincorporated association" within the meaning of Fed. R. Civ. P. 17(b)(1), and

is a "person" and an "employer" within the meaning of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act, and is therefore properly subject to suit. Based on Defendant Hill's position as final policymaker and final decision maker with regards to all matters occurring within the CCSO, the CCSO is directly liable for the unlawful actions of Defendant Hill alleged herein. Defendant CCSO may be served with process through Sheriff Victor Hill, at his business address of 9157 Tara Boulevard, Jonesboro, Ga. 30236.

15.

The Defendant Clayton County is a political subdivision of the State of Georgia and is subject to suits of this kind and nature. All of Defendant Hill's actions complained of herein were taken under color of state and local law pursuant to the policy and custom of Clayton County and/or the Clayton County Sheriff's Office. Clayton County may be served with process via service on Eldrin Bell, Chairman of the Clayton County Board of Commissioners, at his business address of 112 Smith Street, Jonesboro, Ga. 112 Smith Street, Jonesboro, Ga., 30236.

16.

As Sheriff of Clayton County, Defendant Hill is the final policymaking official with regards to all matters occurring within the Clayton County Sheriff's Office, including the actions described herein, which actions were taken under color of state

-5-

and local law pursuant delegated power and authority of Defendant Clayton County.

## FACTUAL ALLEGATIONS

17.

All of the Plaintiffs are covered under, and protected by the Clayton County

Civil Service Act, Ga. L. 1994, p.4399, and its predecessor legislation. Based on this

protection, Plaintiffs could be discharged, suspended or demoted only "for cause",

and only after notice and hearing. Pursuant to the Act, and implementing regulations,

Plaintiffs could not be discharged, suspended, demoted, or otherwise adversely

affected in their employment based on their political associations, beliefs, or activities,

including speaking out in favor of (or against) the candidates of their choice for

political office.

18.

At all times relevant to this action, the following Plaintiffs held "Deputy

Sheriff" positions in the Clayton County Sheriff's Office when Defendant Hill

assumed office:

| Plaintiff | Rank |
|---|---|
| Bartlett, L | Major |
| Maddox, M | Major |
| Daniel, A | Captain |
| Glaze, T | Captain |
| Haralson, G | Captain |
| Cash, D | Lieutenant |
| Joiner, P | Lieutenant |

Nelson, C          Lieutenant
Watkins, G         Lieutenant
Crisp, B           Sergeant

19.

True and accurate copies of the job descriptions applicable to the civil service

protected positions held by the Plaintiffs listed in Par. "18" are attached hereto as

Exhibits "1"-"4". All of the Plaintiffs, with the exception of the Captain and Majors,

are paid an hourly wage and are considered "non-exempt" from the overtime

requirements of the Fair Labor Standards Act.

20.

The duties and responsibilities of the employees referenced in Par. 18 were of

extremely limited scope, were ministerial rather than discretionary, and involved no

"policymaking" or "confidential" duties.

21.

The duties and responsibilities of the employees referenced in Par. 18 were

tightly constrained by applicable statutes, rules and regulations, including the Rules

and Regulations of the Clayton County Sheriff's Office, applicable Job Descriptions

and Salary schedules, the Rules and Regulations of the Clayton County Civil Service

System, and the Rules and Regulations of the Police Officer Standards and Training

Council.

22.

The Plaintiffs referenced in Par.18 possessed no autonomous authority to fix or implement policy, and were uninvolved in any policymaking or confidential issues impacting the Sheriff's Office.

23.

The Plaintiffs referenced in Par. 18 possessed no discretionary policymaking powers and had no meaningful input into government decision making on issues where there was reason for principled disagreement on goals.

24.

The duties and responsibilities of the Plaintiffs referenced in Par. 18 did not require any "close" or "confidential" working relationship with the Sheriff of Clayton County.

25.

In stark contrast to the Alabama Deputy Sheriff Plaintiffs in Terry v. Cook, 866 F.2d 373 (11th Cir. 1989) and/or the Florida Deputy Sheriffs in Cutcliffe v. Cochran, 117 F.3d 1353 (11th Cir. 1997), none of the Plaintiffs referenced in Par. 18 were the general agents of the Sheriff empowered to enter in to business transactions for the Sheriff, and none of the Plaintiffs referenced in Pars. 18 were or are in any fashion the "alter ego" of the Sheriff.

-8-

26.

In stark contrast to the Alabama and Florida Deputies at issue in    Terry and
Cutcliffe, the Sheriff of Clayton County is not liable for actions of Deputy Sheriffs
apart except from their accounting for all public and other funds or property coming
in to the deputy's custody, control, care or possession---actions which are not at issue
in this case. O.C.G.A. §§15-16-5; 15-16-23;  Ga. L. 1994, p.747.

27.

In stark contrast to the Alabama and Florida Deputy Sheriffs at issue in Terry
and Cutcliffe, the Sheriff of Clayton County is not liable for the misconduct of Deputy
Sheriffs apart from situations in which the sheriff personally benefitted financially
from the act complained of, or,  the sheriff was personally aware and had actual
knowledge that the act was illegal, or the sheriff's own negligence caused the injury
complained of. O.C.G.A. §15-16-24.

28.

Pursuant to Georgia law, the duties of County Sheriffs are as follows:

(1)     executing and returning the processes and orders of the courts...;

(2)     attending all sessions of the superior court...;

(3)     attending...election[s]...;

(4)     publishing sales, citations and other proceedings....;

(5)   keeping an execution docket...;

(6)   keeping a book in which he...enter[s] a record of all sales made by process of court;

(7)   receiving from the preceding sheriff all unexecuted writs and processes...

(8)   such other duties as are or may be imposed by law or which necessarily appertain to his or her office.

O.C.G.A. §15-16-10.

29.

In addition to the foregoing, the Office of Sheriff in Georgia is responsible for:

(1)   the operation of the County Jail;

(2)   the safeguarding of County property.

O.C.G.A. §42-4-1; 42-2-4; 36-9-8.

30.

The Office of County Sheriff in Georgia does not implicate partisan political concerns in the first place. O.C.G.A. §§15-16-23; §42-4-1; 42-2-4; 36-9-8; Parrish v. Nikolits, 88 F.3d 1088, 1093 (11th Cir. 1996) ("There is no evidence in the record as to whether the Appraiser's Office, whose mission is to appraise property for tax purposes based on formulae set by statute and professional standards, even implicates partisan concerns in the first instance."); Branti v. Finkel, 445 U.S. 507, 100 S.Ct.

-10-

1287, 1295 63 L.Ed.2d 574 and n.14 (1980)("whatever policymaking occurs in the public defender's office must relate to the needs of individual clients and not to any partisan political interests....By what rationale can it be even be suggested that it is legitimate to consider, in the selection process, the politics of one who is to represent indigent defendants accused of crime? No 'compelling state interest' can be served by insisting that those who represent such defendants publicly profess to be Democrats (or Republicans?)" Jantzen v. Hawkins, 188 F.3d 1247, 1255); (10 [th] Cir. 1999)("Given the actual duties and inherent powers of deputy sheriffs in Canadian County, Oklahoma, we find there to be a genuine dispute as to whether political loyalty is an appropriate requirement for a deputy sheriff. In short, there is no compellingly politically loyal way to arrest a thief, no partisan way to serve a summons or to stop a speeding motorist, and defendants have not pointed to anything in the record to show that Jantzen or Preno's professional judgment would be, or were, skewed by their political loyalties."); Ruffino v. Sheahan, 218 F.3d 697, 700 (7th Cir. 2000)("the application of the policymaker exception depends on the particular job functions of the employees in question. Over what would these deputy sheriffs, who were serving as court security officers, be making policy? How to operate the security screening machines? Whom to allow in the courtrooms?).

-11-

31.

Political association/affiliation is not a necessary or proper requirement for the efficient carrying out of the mission of a Georgia Sheriff's Office, nor is political association/affiliation a necessary or proper requirement for the efficient carrying out of the specific positions of employment held by the Plaintiffs.

32.

Defendant Hill was a candidate for the elected position of Sheriff during calendar year 2004, defeating white incumbent Sheriff Stanley Tuggle during in the July, 2004 Democratic primary. Defendant Hill later won the general election in November, 2004, and took office effective January 1, 2005.

33.

Prior to the primary election in July of 2004, all of the Plaintiffs, with the exception of Plaintiff Nelson, actively and publicly supported and spoke out in favor of the candidacy of then Sheriff Tuggle, and actively and publicly spoke out against the candidacy of then candidate Hill.

34.

Some, but not all of the expressive activities carried out by the Plaintiffs referenced in Par. 33 in support of Sheriff Tuggle's candidacy included:

(a)     orally advocating the reelection of Sheriff Tuggle
        to voters within the County, at campaign events and elsewhere;

(b)     donating money to Sheriff Tuggle's campaign;

( c)    placing campaign  yard signs advocating Tuggle's
        reelection in their yards;

(d)     placing campaign  yard signs advocating Tuggle's
        reelection in other persons' yards;

(e)     arranging, attending, and helping finance  campaign
        events;

(f)     taking out advertisements in the local newspaper advocating
        Sheriff Tuggle's reelection;

35.

Attached hereto as Exhibit "5" is a copy of one of the campaign handouts

Plaintiffs passed out throughout the County during the 2004 election for Sheriff.

Therein, it was specifically asserted that

> Mr. Victor Hill is an African-American police officer
> serving as a detective. He has approached voters attempting
> to persuade them to vote based solely on race, not
> qualifications. He would have you believe that he is the
> "dynamic" person needed to run the Sheriff's Office and
> that he would be "tough on crime." We don't think 38
> arrests out of 664 criminal cases since 1999 is very
> dynamic or tough. Do the math and your find that's less
> than 6%.

36.

During the course of the 2004 campaign for Sheriff, in carrying out the

activities referenced in Par. 35,   the Plaintiffs referenced in Par. 18, frequently and

-13-

routinely:

(a) commented to potential voters on the respective qualifications of Sheriff Tuggle and then-Candidate Victor Hill;

(b) expressed the view to potential voters that then-Candidate Victor Hill did not possess the qualifications or experience necessary be Sheriff;

( c) urged potential voters to vote  for Sheriff Tuggle, and to lend their support, by way money and time, to Sheriff Tuggle's campaign;

( d) expressed the view that then-Candidate Sheriff was attempting to persuade County voters to cast their votes based solely on racial considerations;

(e) expressed the view that then candidate-Hill's record of performance in the Clayton County Police Department was at best mediocre, and did not warrant his elevation to Sheriff.

(f) attempted to persuade County voters to vote for Sheriff Tuggle and against then-candidate Hill.

37.

Defendant Hill was aware at the time he assumed office in January of 2005  of

the Plaintiffs' expressive speech activities referenced in Pars. "34"-"36"  and was

likewise aware of Plaintiffs' political association with former Sheriff Tuggle.

38.

Defendant Hill was aware, at the time he assumed office on January 1, 2005,

that Plaintiffs were covered and protected by the Clayton County Civil Service Act,

and therefore could not be discharged, demoted, or suspended absent cause, notice and

-14-

hearing.

39.

Defendant Hill was aware, at the time he assumed office on January 1, 2005, that pursuant to the governing Civil Service Act and binding regulations promulgated thereunder, that Plaintiffs could not permissibly be discharged, demoted, suspended, or otherwise adversely affected because of the political affiliations, associations, beliefs, or expressive speech.

40.

Upon assuming Office, Defendant Hill summarily fired the Plaintiffs with no cause, notice of hearing.

41.

Subsequent to the illegal firings referenced in Par. 40, on January 4, 2005, Defendant Hill was ordered by a court of competent jurisdiction to immediately "reinstate" the Plaintiffs to their former positions. Hill refused to do so, instead placing the Plaintiffs (and other illegally fired employees) on "administrative leave".

42.

After refusing to return the employees to their positions for a period of approximately ten (10) days, Hill belatedly allowed the illegally-fired employees to physically return to work on January 13, 2005. At that time, however, rather than truly

reinstating them, Hill summarily demoted them to entry level positions, without cause, notice, or hearing.

43.

During a hearing held on February 3, 2005 Hill was held in Contempt of Court for failing to actually reinstate the employees as previously ordered.

44.

Hill finally purport to truly reinstate the Plaintiffs to their former positions on or about February 8, 2005.

45.

Rather than truly reinstating the Plaintiffs, Defendant Hill "unofficially" transferred considerable portions of their duties, responsibilities, and authority to newly hired political supporters, in a to-date successful effort to circumvent the Orders of the Court.

46.

The "unofficial" transfer of powers, duties, and responsibilities has been accomplished by Hill by way of bestowing upon his loyal political supporters titles such as Major, Captain, as well as the authority vested in those levels of rank, but not memorializing such actions in writing, for the purpose of avoiding compliance with Court Orders entered against him.

-16-

47.

In response to Defendant Hill's conduct, Plaintiffs have repeatedly petitioned their government for redress—reveal, remedy and bring Defendant Hill's unlawful conduct (race, age and gender discrimination, and retaliation based on political association/ and speech) to a halt.

48.

Plaintiffs' efforts to petition the government for redress have included written and/or oral communications detailing Defendant Hill's unlawful conduct to: the Governor of the State of Georgia; the Attorney General of the State of Georgia; the Peace Officers Standards and Training Council ("POST"); the U.S. Equal Employment Opportunity Commission ("EEOC"), the Clayton County Board of Commissioners, and the Clayton County Civil Service Board. These petition activities pertained to matters of public concern.

49.

In addition to the speech and petition activities detailed in Par. 48, Plaintiffs have filed two federal suits in this Court----Case Nos. 1:05-CV-0083-CC and 1:05-CV-0189-TWT, in which they have asserted various federal claims against Defendant Hill and others, including unlawful race and gender discrimination and retaliation under Title VII, 42 U.S.C. §1981, the Equal Protection Clause and 42 U.S.C. §1983;

unlawful age discrimination and retaliation under the ADEA; and unlawful retaliation for protected political speech and associations under the First Amendment and 42 U.S.C. §1983, and various conspiracy claims under 42 U.S.C. §§1982 and 1985. These petition activities concerned matters of public concern.

50.

Defendant Hill has responded to the Plaintiffs' filing of suit against him by way of creating, implementing, adopting, encouraging, fostering, facilitating and subjecting the Plaintiffs to a subjectively and objectively hostile work environment borne of retaliatory animus, as well as the unlawful motivations (Plaintiffs' race, age, gender, political affiliation/speech) which prompted the firings on January 3, 2005. The resulting hostile work environment is one of the claims asserted in Civil Action File No. 1:05-CV-0189-TWT.

51.

Based on their duties and responsibilities, both before and after January 3, 2005, pursuant to longstanding policy, custom, and "employment practice" of the Defendants, Plaintiffs Bartlett, Maddox, Glaze, Daniel, Haralson, Watkins, Joiner and Crisp (and others) were provided "take home" automobiles owned (and ultimately controlled) by Defendant Clayton County.

52.

Both before and after January 3, 2005, pursuant to the "employment practice" described in Par. 51, some of the Plaintiffs, including at least Plaintiffs Bartlett, Maddox, and Watkins had complete and unrestricted use of the County "take home" vehicles, due to the need for them to be available to be called in to work on a moment's notice to respond situations and circumstances within the Sheriff's Office.

53.

Though not permitted complete, unrestricted use of the "take-home" vehicles, Plaintiffs Glaze, Haralson, Daniel, Joiner and Crisp, were authorized to utilize said vehicles for transportation to and from work, and for any and all necessary work related duties.

54.

The use of county-owned automobiles is a frequent   and predictable requirement in the carrying out of Plaintiffs' duties and responsibilities, which frequently require  Plaintiffs to move about within or without the County and that they be on-call to respond to situations in the Sheriff's Office. In the case of Plaintiff Crisp, his assigned duties call for him to drive 100 miles round trip to his daily  duty assignment.

55.

Defendants' "employment practice" of providing "take home" vehicles to the plaintiffs constituted a major and important benefit of employment and a significant convenience to the Plaintiffs because:

- the "take home" vehicles were provided free of charge (thereby allowing plaintiffs to avoid incurring wear and tear on their personal automobiles in traveling to and from work, or on call-back);

- the County paid all maintenance and repair expenses;

- the County paid all gasoline expenses

- the County paid all insurance expenses.

56.

The provision of "take home" automobiles to the plaintiffs constituted a financially beneficial "privilege of employment" and "benefit" of employment, which was "part and parcel of the employment relationship" which Defendant Hill could not lawfully "dole out in a discriminatory fashion" within the meaning of Hishon v. King & Spalding, 487 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

57.

The provision of the "take home" automobiles to the plaintiffs constituted a financially beneficial "employment practice" within the meaning of 42 U.S.C.

§2000e-2(m).

58.

The provision of the "take home" automobiles to the plaintiffs constituted an "incident of employment" within the meaning of Hishon v. King & Spalding, 487 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

59.

The provision of the "take home" automobiles to the plaintiffs constituted "an aspect of the relationship between" Plaintiffs and their employer (the Defendants) within the meaning of Hishon v. King & Spalding, 487 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

60.

Based on their duties and responsibilities, both before and after January 3, 2005, pursuant to longstanding policy, custom, and "employment practice" of the Defendants,   Plaintiffs Bartlett, Maddox, Glaze, Daniel, Haralson, Watkins, Joiner, Cash, Nelson,   and Crisp (and others)  were provided "take home" walkie-talkie equipped cellular phones owned  (and ultimately controlled)  by Defendant Clayton County.

61.

Use of the  County-owned and controlled cellular phones referenced in Par. 60

constitute indispensable and critical tools for necessary communications by and among Sheriff's Office personnel necessary for the carrying out of Plaintiffs' duties and responsibilities and the business of the Sheriff's Office, without which Plaintiffs are crippled in their ability to perform their duties and responsibilities.

62.

The telephone service associated with the cellular phones referenced in Pars. 60 are the subject to a contract between the County and a cellular telephone service provider which provides a monthly standard rate for such service, which rate includes unlimited use ("minutes") and unlimited long distance services.

63.

By virtue of longstanding County and Sheriff's Office custom and "employment practice", use of said cellular telephones was not restricted to "county" business, and Plaintiffs were allowed and permitted to utilize said phone for personal reasons, since the use of the phones for personal reasons resulted in no cost to the County.

64.

Defendants' "employment practice" of providing "take home" cellular phones to the plaintiffs constituted a major and important benefit of employment and convenience to the Plaintiffs because:

-22-

- the "take home" cellular phones were provided free of charge (thereby allowing plaintiffs to avoid incurring the monthly expense of personal cellular phones, as well the cost associated with wear and tear on personal cellular phones);

- the County paid all maintenance and repair expenses, which would otherwise be borne by the Plaintiffs;

65.

Defendants' "employment practice" of providing "take home" cellular phones to the plaintiffs constituted a significant, considerable , substantial, and important "benefit" and "privilege of employment" afforded to the Plaintiffs which was part and parcel of the employment relationship which Defendant Hill could not lawfully "dole out in a discriminatory fashion" within the meaning of Hishon v. King & Spalding, 487 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

66.

The provision of the "take home" cellular phones to the plaintiffs constituted an "employment practice" of the Defendants within the meaning of 42 U.S.C. §2000e-2(m).

67.

The provision of the "take home" cellular phones to the plaintiffs constituted an

-23-

"incident of employment", within the meaning of <u>Hishon v. King & Spalding</u>, 487 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

68.

The provision of the "take home" cellular phones to the plaintiffs constituted "an aspect of the relationship between the plaintiffs and their employer" (the Defendants), within the meaning of <u>Hishon v. King & Spalding</u>, 487 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

69.

During the week of January 23, 2006, Defendant Hill announced his intention to and/or did seize and repossess the take-home County automobiles and cellular phones previously assigned to the plaintiffs.

70.

Defendants' repossession/seizure of the "take-home" County automobiles and cellular phones constitutes an "employment practice" which limits, classifies  and otherwise adversely affects plaintiffs' status as employees.

71.

At the same time Defendant Hill seized and repossessed the take-home County automobiles and cellular phones previously assigned to the Plaintiffs, Defendants continued in their "employment practice" of providing such automobiles and cellular

phones to other "favored" employees for reasons not pertaining to duties/responsibilities, but rather, based on race and political speech/association.

72.

The rank, position, and job related duties and responsibilities of the persons whom Hill allowed to retain possession and use of the County-owned "take home" automobiles and cellular phones were in many cases less critical than those held by the Plaintiffs, and do not justify their possession of "take home" automobiles and cellular phones, when such benefits of employment are simultaneously being denied to the Plaintiffs.

73.

Defendants' challenged "employment practice" (seizure of the County-owned and controlled automobiles and cell phones referenced above) was motivated, in part, by Plaintiffs' race (white, in the case of Plaintiffs Bartlett, Maddox, Glaze, Haralson, Joiner, Cash, and Crisp; and black, in the case of Plaintiffs Daniel, Watkins, and Nelson).

74.

Defendants' challenged "employment practice" (seizure of the County-owned and controlled automobiles and cell phones referenced above) was motivated in part, by Plaintiffs' protected political association and affiliation with former Sheriff Tuggle.

-25-

75.

Defendants' challenged "employment practice" (seizure of the County-owned and controlled automobiles and cell phones referenced above) was motivated, in part, by Plaintiffs' protected speech activities on matters of public concern, including their public expressions of support for Sheriff Tuggle's candidacy for Sheriff, and their statements in opposition of candidate Hill's candidacy for Sheriff, as well as their expression of the reasons underlying their political support for Sheriff Tuggle and their opposition to candidate Hill.

76.

Defendants' challenged "employment practice" (seizure of the County-owned and controlled automobiles and cell phones referenced above) was motivated, in part, by Plaintiffs' protected speech activities on matters of public concern, including protests against Defendant Hill's misuse of his position as Sheriff to coerce political support and allegiance.

77.

Defendants' challenged "employment practice" (seizure of the County-owned and controlled automobiles and cell phones referenced above) was motivated, in part, by Plaintiffs' having petitioned their government for redress by way of communications/complaints to: the Governor of the State of Georgia; the Attorney

-26-

General of the State of Georgia; the Peace Officers Standards and Training Council ("POST");  the U.S. Equal Employment Opportunity Commission ("EEOC"), the Clayton County Board of Commissioners, and the Clayton County Civil Service Board.

78.

Defendants' challenged "employment practice (seizure of the County-owned and controlled automobiles and cell phones referenced above) was motivated, in part, by Plaintiffs' having petitioned their government for redress by way of initiating and pursuing statutory and constitutional  claims for unlawful race discrimination, retaliation, and harassment  in federal court, to wit:  Civil Action File No. 1:05-CV-0083 and 1:05-CV-0189.

79.

Defendants' challenged "employment practice" (seizure of the County-owned and controlled automobiles and cell phones referenced above) was motivated, in part, by Plaintiffs' formation and maintenance of an advocacy group for the purpose of mutual aid and support an for the further purpose of  combating  Defendant Hill's sustained campaign of unlawful conduct since January 3, 2005.

80.

In the case of Plaintiff Cpt. Angelo   Daniel, Defendants' challenged "employment practice" (seizure of the County-owned and controlled automobile and

cellular phone) was based, in part, on Plaintiff Daniel's protected intimate association with Lt.Leontyne Daniel, also an employee in the CCSO.

81.

Defendants' challenged "employment practice", in the form of conferring substantial and considerable "benefits" and "privileges" of employment based on race, subjected plaintiffs to differential treatment in the conferral of public benefits based on their respective races.

82.

Defendants' seizure of the County-owned and controlled automobiles and cellular phones referenced above constituted an "employment practice" which deprived Plaintiffs of the tools and abilities necessary for the proper performance of their duties and responsibilities, and also deprived them of important and substantial "benefits" and "privileges" of employment.

83.

Defendants' seizure of the County-owned and controlled automobiles and cellular phones limits, segregates, and classifies the Plaintiffs in a way which deprives and tends to deprive them of employment opportunities because of race.

84.

Defendants' seizure of the County-owned and controlled automobiles and

cellular phones adversely affects and/or tends to adversely affect Plaintiffs' status as employees because of race and other unlawful factors, including Plaintiffs' exercise of their rights under the First Amendment.

85.

Defendants' seizure of the County-owned and controlled automobiles and cellular phones constitutes a racially inspired impairment of the right to make and enforce their contract of employment with the Defendants, more specifically, a racially-inspired impairment of their ability to perform their obligations under their contract of employment with the Defendants.

86.

Defendants' seizure of the County-owned and controlled automobiles and cellular phones previously provided to the Plaintiffs at no cost constitutes a racially inspired impairment of the right to make and enforce their contract of employment with the Defendants, more specifically, a racially-inspired modification of the benefits, privileges, terms, and conditions of the employment agreement between the Plaintiffs and the Defendants.

87.

The Defendant Clayton County, though its Board of Commissioners, has been repeatedly placed   on notice regarding Defendant Hill's unlawful race-based

-29-

performance of the employment of the contract with the Plaintiffs as set forth above, and  and has likewise been placed on notice of Defendant Hill's  motive to punish those who have associated with and spoken on behalf of his political opponents, also set forth above. See, Exhibits "6", "7" and "8" hereto.

88.

Defendant Clayton County possess the ability and power to control and bring to an end Defendant Hill's "employment practice" of discriminatorily and retaliatorily conferring of benefits and privileges of employment based on race, and protected association/affiliation and speech pursuant to Ga. Const. Art. IX, § II, Para. I(a); O.C.G.A. §§36-9-1, 36-9-2 and 36-5-22.1(a)(1),  but has elected not to utilize that power, and has thereby ratified, condoned, and acquiesced in Defendant Hill's unlawful conduct, including the unlawful motives underlying it.

89.

To the extent that Clayton County might in fact lack  power to control  over the County property described herein (County automobiles and cellular phones) and to bring an end Defendant Hill's "employment practice" of discriminatorily and retaliatorily conferring benefits and privileges of employment based on race and protected association/affiliation and speech, such inability is occasioned by Clayton County's irrevocable delegation of its power to Defendant Hill to determine the means

-30-

and manner which such County property is utilized.

90.

As a result of Defendants' actions, Plaintiffs have suffered invasions of their rights conferred under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and 42 U.S.C. §1981.

91.

As a consequence of the conduct complained of herein, Plaintiffs have suffered injuries cognizable under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C.§1981----differential (unfavorable) treatment and consideration for government provided benefits based on race, and based on protected speech and association to wit: the provision of take-home automobiles and cellular phones by their employers.

92.

As a consequence of the conduct complained of herein, Plaintiffs have suffered an injury cognizable under the First and Fourteenth Amendments and 42 U.S.C. §§1981----direct pecuniary injury in the form of lost benefits and privileges of employment, including having been forced to incur out of pocket costs or expenses associated with replacing said benefits and privileges of employment.

-31-

93.

As a consequence of the conduct complained of herein, Plaintiffs' "status as employees" has been adversely affected not only as concerns the terms, benefits and privileges of employment, but also in their ability to carry out the duties and responsibilities of their positions (perform their obligations under their contract of employment with the defendants) since the purpose and effect of Defendant Hill's seizure of the County-owned take-home automobiles and cellular phones is to make the effective and efficient carrying out of Plaintiffs' duties and responsibilities impossible, and to thereby set them up for failure in their positions.

94.

As a consequence of the complained of conduct, Plaintiffs have suffered an injury cognizable under First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§1981----severe mental and emotional distress.

95.

Defendant Hill's conduct detailed herein, was deliberate, willful, and intentional, and was carried out in bad faith, thereby authorizing an award of punitive damages against Defendant Hill in his individual capacity, and the imposition of attorney's fees and costs of litigation against Hill in both his personal and official capacities under O.C.G.A. §13-6-11

-32-

96.

Based on Defendant Hill's conduct noted herein, including the discriminatory and retaliatory seizure of the County-owned automobiles and cellular phones alleged herein, Plaintiffs are in reasonable fear that Defendant Hill will continue in the future to unlawfully differentiate among and distinguish between his employees in his employment practices, including the conferring of various employment benefits and privileges, based on considerations of race and/or political association/affiliation and/or speech.

97.

Defendants' conduct noted herein has already caused Plaintiffs to suffer irreparable harm, and unabated, will continue to cause Plaintiffs to suffer irreparable harm in the future.

## SUBSTANTIVE ALLEGATIONS

## COUNT ONE: 42 U.S.C. §1983 VIOLATION OF PLAINTIFFS' RIGHTS TO BE FREE FROM UNLAWFUL RACE DISCRIMINATION

98.

Defendants' employment practice of denying to the Plaintiffs substantial and indispensable benefits and privileges of employment (take-home County automobiles and cellular phones) based on their race(s) would be found by a reasonable person of ordinary firmness in the place of the plaintiffs to be "adverse", and therefore

-33-

constitutes actionable adverse employment action violative of Plaintiffs' Fourteenth Amendment right to be free from racial discrimination actionable via 42 U.S.C. §1983.

99.

Defendants' employment practice of denying to the Plaintiffs substantial and indispensable benefits and privileges of employment (take-home County automobiles and cellular phones) based on their race(s) constitutes an invasion of legal rights secured to them under the Equal Protection Clause of the Fourteenth Amendment, and is actionable under 42 U.S.C. §1983.

## **COUNT TWO : 42 U.S.C. §1981 RACE DISCRIMINATION**

100.

Defendants' employment practice of denying to the Plaintiffs substantial and indispensable benefits and privileges of employment (take-home County automobiles and cellular phones) based their race(s) would be found by a reasonable person of ordinary firmness in the place of the plaintiffs to be "adverse", and therefore constitutes actionable adverse employment action violative of Plaintiffs' rights under 42 U.S.C. §1981.

101.

Defendants' employment practice of denying to the Plaintiffs substantial and indispensable benefits and privileges of employment (take-home County automobiles

-34-

and cellular phones) based on their race(s) constitutes an invasion of legal rights secured to them under 42 U.S.C. §1981.

## COUNT THREE: 42 U.S.C. §1981 RETALIATION

102.

Defendants' employment practice of denying to the Plaintiffs substantial and indispensable benefits and privileges of employment (take-home County automobiles and cellular phones) in retaliation for Plaintiffs having  protested against and complained  of racial discrimination, including, but not limited to protesting such action by way of filing EEOC charges of racial discrimination  would be found by a reasonable person of ordinary firmness  in the place of the plaintiffs to be "adverse", and therefore   constitutes actionable   adverse employment action violative of Plaintiffs' rights  under 42 U.S.C. §1981.

103.

Defendants' employment practice of denying to the Plaintiffs substantial and indispensable benefits and privileges of employment (take-home County automobiles and cellular phones) in retaliation for having protested against and complained of unlawful race discrimination  constitutes an invasion of legal rights secured to them under 42 U.S.C. §1981.

-35-

## COUNT FOUR: 42 U.S.C. §1983 VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHT OF FREEDOM OF ASSOCIATION

104.

Defendants' employment practice of denying to the Plaintiffs substantial benefits and privileges of employment (take-home County automobiles and cellular phones) based on Plaintiffs' protected political associations/affiliations, specifically, Plaintiffs' affiliation and association with former Sheriff Tuggle, would be found by a reasonable person of ordinary firmness in the place of the plaintiffs to be "adverse", and therefore constitutes adverse employment action violative of Plaintiffs' First Amendment rights of freedom of association actionable via 42 U.S.C. §1983.

105.

Defendants' employment practice of denying to the Plaintiffs substantial and indispensable benefits and privileges of employment (take-home County automobiles and cellular phones) based on their association/affiliation with Sheriff Tuggle constitutes an invasion of legal rights secured to them under the First Amendment and is actionable under 42 U.S.C. §1983.

106.

Defendants' employment practice of denying to the Plaintiffs substantial benefits and privileges of employment (take-home County automobiles and cellular phones) based on Plaintiffs' protected political associations/affiliations, specifically,

-36-

Plaintiffs' affiliation and association with former Sheriff Tuggle,   would "chill"  a

reasonable person of ordinary firmness  in the place of the plaintiffs from engaging in

the legally protected  associations/affiliations alleged,  and therefore  violating  of

Plaintiffs' First Amendment rights of freedom of association, which conduct is

actionable via 42 U.S.C. §1983.

## COUNT FIVE: 42 U.S.C. §1983 VIOLATIONS OF PLAINTIFFS' FIRST AMENDMENT RIGHT OF FREE ASSOCIATION FOR PURPOSES OF COLLECTIVE ACTION,  ADVOCACY AND TO PROVIDE MUTUAL AID, SUPPORT AND COMFORT.

107.

Defendants' employment practice of  denying to the Plaintiffs  benefits and

privileges of employment ("take home" automobile and cellular phone) based on

Defendants' desire to punish Plaintiffs for  forming a group to  engage  in concerted

and collective action for the purpose of mutual aid and comfort, including  revealing

Defendant Hill's misconduct,  would be found to be "adverse" by a reasonable person

of ordinary firmness  in Plaintiffs' position    and therefore   constitutes adverse

employment action violative  of Plaintiffs' First Amendment rights  of freedom of

association.

108.

Defendants' employment practice of denying to the Plaintiffs substantial and

indispensable benefits and privileges of employment (take-home County automobiles

and cellular phones) in retaliation for their having formed a group to engage in concerted and collective action for the purpose of mutual aid and comfort, including the revealing of Defendant Hill's misconduct,   constitutes an invasion of legal rights secured to them under the First Amendment and is actionable under 42 U.S.C. §1983.

109.

Defendants' employment practice of denying to the Plaintiffs substantial benefits and privileges of employment (take-home County automobiles and cellular phones) based on Plaintiffs' protected political associations/affiliations, specifically, Plaintiffs' formation of a group for the purpose of carrying out collective and concerned action to provide mutual comfort and relief and to reveal Defendant Hill's misconduct,   would "chill" a reasonable person of ordinary firmness in the place of the plaintiffs from engaging in the legally protected  association/affiliation alleged, and therefore   violating   of Plaintiffs' First Amendment rights of freedom of association, which conduct is  actionable via 42 U.S.C. §1983.

## COUNT FIVE: 42 U.S.C. §1983 VIOLATION OF PLAINTIFFS' FIRST AMENDMENT RIGHT OF FREEDOM OF  SPEECH

110.

Defendants' employment practice of  denying to the Plaintiffs  benefits and privileges of employment ("take home" automobile and cellular phone) based on Defendants' desire to punish Plaintiffs speaking out on matters of public concern,

including but not limited to (a) open and public expressions of their support for the candidacy of Sheriff Tuggle; (b) open and public expressions of their opposition to the candidacy of Defendant Hill and associated criticisms of Defendant Hill and his candidacy, would be found by a reasonable person of ordinary firmness to be "adverse" and therefore constitutes adverse employment in violation of Plaintiffs' First Amendment right of freedom of speech.

111.

Defendants' employment practice of denying to the Plaintiffs substantial and indispensable benefits and privileges of employment (take-home County automobiles and cellular phones) based on their expressive speech in support of Sheriff Tuggle's candidacy and in opposition to Defendant Hill's candidacy constitutes an invasion of legal rights secured to them under the First Amendment and is actionable under 42 U.S.C. §1983.

112.

Defendants' employment practice of denying to the Plaintiffs substantial benefits and privileges of employment (take-home County automobiles and cellular phones) based on Plaintiffs' protected expressive speech would "chill" a reasonable person of ordinary firmness in the place of the plaintiffs from engaging in the legally protected speech alleged, thereby violating of Plaintiffs' First Amendment right of

-39-

freedom of speech, which conduct is actionable via 42 U.S.C. §1983.

## COUNT SIX: 42 U.S.C. §1983 VIOLATION OF PLAINTIFFS' FIRST AMENDMENT RIGHT OF PETITION

### 113.

Defendants' employment practice of denying to the Plaintiffs benefits and privileges of employment ("take home" automobile and cellular phone) based on Defendants' desire to punish Plaintiffs petitioning their government for redress regarding matters of public concern would be found to be "adverse" by a reasonable person of ordinary firmness in Plaintiffs' position and therefore constitutes adverse employment action violative of Plaintiffs' First Amendment rights of petition.

### 114.

Defendants' employment practice of denying to the Plaintiffs substantial and indispensable benefits and privileges of employment (take-home County automobiles and cellular phones) based on their having petitioned their government for redress regarding mattes of public concern constitutes an invasion of legal rights secured to them under the First Amendment and is actionable under 42 U.S.C. §1983.

### 115.

Defendants' employment practice of denying to the Plaintiffs substantial benefits and privileges of employment (take-home County automobiles and cellular phones) based on Plaintiffs' having petitioned their government for redress regarding

-40-

matters of public concern  would "chill" a reasonable person of ordinary firmness  in the place of the plaintiffs from engaging in the legally protected petition activity alleged,  thereby  violating  of Plaintiffs' First Amendment right to petition their government for redress, which conduct is  actionable via 42 U.S.C. §1983.

## COUNT SEVEN: 42 U.S.C. §1983 VIOLATION OF PLAINTIFF DANIEL'S FIRST AMENDMENT RIGHT OF INTIMATE/FAMILIAL ASSOCIATION

116.

Defendants' employment practice of denying to Plaintiff A. Daniel benefits and privileges of employment ("take home" automobile and cellular phone)  based on his protected intimate and/or familial association with Lt. Leontyne Daniel would be found by  a reasonable person of ordinary firmness in  Plaintiff Daniel's  position to be "adverse",   and therefore  constitutes adverse employment  action violative  of Plaintiff Daniel's  First Amendment right to freedom of initmate/familial  association, and is actionable via 42 U.S.C. §1983.

117.

Defendants' employment practice of denying to Plaintiff Daniel substantial and indispensable benefits and privileges of employment (take-home County automobiles and cellular phones) based on his intimate association (marriage) constitutes an invasion of legal rights secured to them under the First Amendment and is actionable under 42 U.S.C. §1983.

-41-

## COUNT EIGHT: VIOLATION OF RIGHTS CONFERRED
## UNDER THE GEORGIA CONSTITUTION

118.

The actions of the Defendants alleged above constitute violations of the free

speech, association, and petition provisions of the Georgia Constitution, as well as the

provision of the Georgia Constitution guaranteeing Equal Protection under the law

and barring from unlawful race discrimination and retaliation.

.                    ## COUNT EIGHT: O.C.G.A §13-6-11

119.

Defendants' conduct as set forth herein was done in bad faith, thereby

authorizing an award of attorney's fees and costs of litigation to the Plaintiffs.

**WHEREFORE,** Plaintiffs demand judgment as follows:

(a)    that the Plaintiffs recover of the Defendants, jointly and severally,

special damages, including but not limited to the economic equivalent of

the value of the use of the automobiles and cellular phones of which

Plaintiffs were deprived by Defendants' discriminatory employment

practice of conferring benefits and privileges of employment based the

impermissible factors noted above;

(b)    that the Plaintiff recover of the Defendants, jointly and severally, general

damages for severe mental and emotional distress caused by Defendants'

-42-

unlawful conduct;

( c)     that the Plaintiffs recover of the Defendants, jointly and severally, nominal damages;

(d)     that the Plaintiffs be awarded punitive damages against Defendant Hill in his individual capacity;

(e)     that Plaintiffs recover prejudgment interest;

(f)     that the Plaintiffs recover their  costs and reasonable attorney's fees pursuant to 42 U.S.C. §1988;

(e)     that the Court issue a Temporary Restraining Order and Preliminary and Permanent Injunctive relief  compelling Defendants to restore the unlawfully denied benefits and privileges of employment noted herein, and prohibiting him from conferring such benefits based on impermissible factors in the future.;

(f)     that the Plaintiff have such further relief as the Court may deem  just and proper;

(g)     trial by jury

Respectfully submitted this 31st   day of January, 2006.

_____
Harlan S. Miller
Georgia Bar No. 506709

MILLER, BILLIPS & ATES, P.C.
730 Peachtree Street
Suite 750
Atlanta, Georgia 30308
(404) 969-4101
(404) 969-4141 (fax)

-44-